Rivera de Martínez, Juez Ponente
*891 TEXTO COMPLETO DE LA SENTENCIA
La parte recurrente, Farmacias Lechuga, Hatillo, San Marcos y Sonia, acude ante nos mediante recurso de revisión presentado el 7 de agosto de 1998. Plantea que erró el Departamento de Salud al determinar en su resolución de 21 de julio de 1998, notificada en igual fecha, que dicha parte no podía participar como interventora en el proceso de solicitud de un Certificado de Necesidad y Conveniencia (CNC) iniciado por la Farmacia Walgreens.
Para una adecuada comprensión de la controversia ante nuestra consideración, expondremos un breve resumen del trasfondo fáctico y procesal del caso, según surge del expediente.
I
El 29 de mayo de 1979, el Departamento de Salud expidió un certificado de necesidad y conveniencia autorizando el establecimiento de una Farmacia Walgreens en el Centro Comercial Plaza del Atlántico en la Carretera Núm. 2, Km. 80.3 de Arecibo. El 9 de octubre de 1997, Walgreens solicitó a la referida agencia reubicar dicha farmacia en la Carretera Núm. 2, al frente de la entrada principal del Centro Comercial Plaza del Norte, Bo. Carrizales, Km. 81.7 en Hatillo.
Algunas de las farmacias de la región fueron notificadas de la solicitud presentada por Walgreens. Surge del expediente que tras haber sido notificada, la Farmacia Sonia se opuso a la relocalización mediante carta de 29 de diciembre de 1997 y solicitó la celebración de vistas públicas.
El 24 de febrero de 1998, el Departamento de Salud informó que celebraría una vista administrativa el día 7 de abril de 1998 para considerar la solicitud de Walgreens. La Farmacia Sonia compareció mediante moción de fecha 20 de marzo de 1998 solicitando una prórroga de 20 días para contestar interrogatorios y producir ciertos documentos. Propuso, además, la transferencia de la vista para poder contar con el tiempo necesario para prepararse.
Por su parte, Walgreens presentó una solicitud urgente el 1 de abril de 1998, solicitando también el reseñalamiento de la vista. Planteó, que por el hecho de que la Farmacia Sonia no había presentado el interrogatorio que le fuera sometido y en vista de que hacía dos días el Departamento había denegado una solicitud de intervención de su arrendadora, Manley Berenson Associates y F.N.A. Associates, no estaba en condiciones de prepararse adecuadamente para la vista.
Por otro lado, pidió que su solicitud fuese evaluada bajo el Reglamento Núm. 89, aprobado el 20 de octubre de 1997, el cual derogó el Núm. 56 de 15 de agosto de 1986, que se encontraba vigente al momento de presentar la misma.
Atendidas las referidas mociones, el Departamento de Salud emitió resolución el 6 de abril de 1998, notificada en igual fecha, mediante la cual dispuso que la vista se celebraría el 7 de abril de 1997. No obstante, indicó que si la Farmacia Sonia no había contestado el interrogatorio estaría impedida de ofrecer prueba testifical y documental. Añadió que la controversia sobre cuál sería el reglamento aplicable a la situación se resolvería en la vista.
El día de la vista comparecieron las Ledas. Yolanda Benitez y Lydia Ramos en representación de Walgreens, el Ledo. Peter Ortiz, en representación de la Farmacia Sonia y la Leda. Leonor Porrata Doria, en representación de Manley Berenson Associates. También acudieron a la agencia representantes de otras farmacias interesadas ubicadas en Hatillo, pero no estuvieron presentes en la vista. Estas no habían sido notificadas de los procedimientos.
Previo a que la Oficial Examinadora decidiera suspender la vista, expresó su posición respecto a varios asuntos que fueron presentados por las partes para su consideración.
En primer término, expuso que el caso se estaría evaluando conforme a lo dispuesto por el *892 Reglamento Núm. 56, el cual estaba vigente al momento de presentarse la solicitud. En adición, a manera de reconsideración, le informó verbalmente a Manley que no tenía legitimación activa (standing) para participar de los procedimientos.
El Ledo. Ortiz planteó que el procedimiento era nulo porque sólo se habían citado a las farmacias de Arecibo y no a las de Hatillo. La Leda. Benitez, representando a Walgreens, informó que no se había hecho porque además de Walmart, quien fue notificada y no quiso participar, en Hatillo no había farmacias que se encontraran dentro de la milla radial de la ubicación propuesta. Sobre ello, dispuso la Oficial Examinadora que había que notificar a todas las partes afectadas o a las partes que pudiesen oponerse.
El 16 de abril de 1988, Walgreens presentó un documento titulado: "Solicitud de reconsideración sobre orden referente a notificación de personas afectadas." Mediante el mismo se opuso a la determinación de la Oficial Examinadora en el sentido de que la notificación por carta debía hacerse a todas las farmacias, dentro del municipio al cual se fuera a relocalizar la farmacia, y no únicamente a las farmacias localizadas dentro de la milla de la localización propuesta. Posteriormente, el 27 de abril de 1998, presentó su oposición a que la Farmacia Sonia participase del procedimiento administrativo. Planteó que ésta no se encontraba ubicada dentro del radio de la milla de la ubicación de Walgreens y tampoco de la ubicación propuesta. Añadió, que la Farmacia Sonia no tenía legitimación activa para participar en el procedimiento, por no haber demostrado que sería afectada por los efectos de la propuesta de reubicación. Alegó que de hecho, la reubicación alejaría a Walgreens de la localización de la Farmacia Sonia. Por su parte, esta última expresó su posición mediante moción de 8 de mayo de 1988, sosteniendo que tenía derecho a participar en el proceso independientemente de que su facilidad estuviese o no en el área de servicio de la facilidad propuesta.
En igual fecha el Ledo. Peter Ortiz presentó tres mociones adicionales. En una de ellas informó que sus servicios profesionales habían sido contratados por las Farmacias Lechuga, Hatillo, San Marcos y López Reformada, quienes también se oponían a la concesión del certificado de necesidad y conveniencia y solicitaron participar en la vista pública. En otra de las mociones solicitó transferencia de la vista a celebrarse el 26 de mayo de 1988, y en la última, solicitó que se pospusiese el asunto de la presentación de los interrogatorios hasta tanto se resolviese por la agencia si la Farmacia Sonia habría de participar en el proceso. Walgreens presentó oposición a dichas mociones el 14 de mayo de 1988.
Ese día el Departamento de Salud emitió resolución parcial declarando sin lugar la moción de reconsideración a la moción de intervención presentada por Manley Berenson Associates S.E., F.N.A. Associates. Resolvió que dicha parte no podría participar de la vista administrativa por no ser parte afectada de acuerdo con las disposiciones del Reglamento 56 del Departamento de Salud, y por no tener legitimación activa. Determinó que Manley no era dueño ni operador de una farmacia en el área de servicio de la acción propuesta, sino una sociedad especial dedicada al desarrollo y administración de centros comerciales en Puerto Rico. Como dueña del Centro Comercial "Plaza del Atlántico", Walgreens había sido su arrendataria desde 1980.
En cuanto a cuáles normas reglamentarias aplicaban, dispuso que el Reglamento número 89 no tenía efecto retroactivo en la situación planteada, por lo que procedía aplicar el Reglamento número 56. 
Posteriormente, el 18 de mayo de 1988, el Departamento de Salud emitió otra resolución, notificada el día 20 del mismo mes y año, en la cual dispuso, entre otras cosas, que podrían participar de la vista administrativa las farmacias que estuviesen en el área de servicio, es decir, dentro de la milla radial de la facilidad propuesta. En cuanto a la Farmacia López Reformada dispuso que no podría participar por no estar siquiera en el Municipio donde se pretendía relocalizar la Farmacia Walgreens.
El 22 de mayo de 1998, las Farmacias Lechuga, Hatillo, San Marcos, Sonia y López Reformada presentaron una moción de reconsideración mediante la cual argüyeron que tenían derecho a participar por cumplir con los requisitos de la sección C del Artículo VIII del Reglamento Núm. 85 del Secretario de Salud para Regular los Procedimientos Adjudicativos en el Departamento de Salud y sus Dependencias, aprobado el 5 de agosto de 1996, y con la definición de opositor contenida en el mismo. En igual fecha presentaron, además, una moción en auxilio de jurisdicción solicitando la *893 suspensión de la vista de 26 de mayo de 1998, o en la alternativa, que se desestimase la propuesta de Walgreens por no cumplir con el Reglamento Núm. 89 y el Memorando Circular 1997-1. Walgreens se opuso mediante moción de 26 de mayo de 1998.
Para ese día estaba pautada la vista administrativa a la cual comparecieron las Ledas. Yolanda Benitez y Lydia Ramos en representación de Walgreens así como el Ledo. Peter Ortiz en representación de las otras farmacias. Antes de suspender la vista, la Oficial Examinadora escuchó los planteamientos de las partes en tomo a la moción de reconsideración presentada por las farmacias. Adelantó que pondría por escrito su determinación de que el reglamento aplicable era el Núm. 56 y que su posición respecto a que la notificación se hacía a todas las farmacias del municipio respondía a que de esa forma se podía prevenir que no se quedase sin notificar algún establecimiento que se encontrase dentro de la milla radial. No obstante, indicó que el mero hecho de ser notificadas no les daba derecho a participar.
Finalmente, el 21 de julio de 1988, el Departamento de Salud emitió una resolución parcial acogiendo el informe de la Oficial Examinadora y declaró sin lugar la solicitud de intervención de las Farmacias Sonia y López Reformada de Arecibo, así como las Farmacias Lechuga, Hatillo y San Marcos de Hatillo, resolviendo que ninguna de las farmacias opositoras tenía legitimación activa para participar en los procedimientos administrativos, por cuanto no eran partes afectadas según el Reglamento Núm. 56, ni bajo la doctrina de legitimación activa, ni al amparo del Reglamento Núm.
85.
Específicamente, en cuanto a la Farmacia Sonia la Oficial Examinadora indicó, entre otras cosas, que ésta se encontraba ubicada en el Municipio de Arecibo a más de 2 millas de distancia de la Farmacia Walgreens en su localidad de Plaza del Atlántico. Luego de la relocalización estaría aún más lejos. En cuanto a las Farmacias Hatillo, Lechuga y San Marcos, localizadas en el Municipio de Hatillo, señaló que ninguna.se encontraba dentro del área de servicio que Walgreens se proponía servir. Sobre la Farmacia López Reformada, situada en Arecibo, sostuvo que en adición a no encontrarse dentro del área de servicio propuesta, ésta no notificó oportuna o debidamente su solicitud de intervención.
De otra parte, reiteró que la solicitud relativa al certificado de necesidad y conveniencia se evaluaría a la luz de las disposiciones del Reglamento Núm. 56, vigente al momento de presentarse la solicitud.
Inconformes, las farmacias Lechuga, Hatillo, Sonia y San Marcos acuden ante nos mediante recurso de revisión el 7 de agosto de 1998, alegando el siguiente error:

"Erró la Honorable Secretaria de Salud al resolver que las Farmacias Lechuga, San Marcos, Hatillo y Sonia no tienen derecho a participar en el proceso."

El 7 de agosto de 1998, la parte recurrente presentó una moción solicitando la consolidación del recurso con el de Manley Berenson Associates, S.E. v. Departamento de Salud, identificado como Núm. KLRA-98-0270, el cual tenía pendiente de resolver una moción de reconsideración. Más tarde el recurrente desistió de dicha solicitud, reconociendo que operaba la academicidad, por haberse resuelto la moción de reconsideración.
También presentó una moción en auxilio de jurisdicción solicitando la paralización de la vista administrativa de 24 de agosto de 1998. El 11 de agosto de 1998, accedimos a paralizar los procedimientos y concedimos a la parte recurrida un término de 15 días para que expresase su posición.
Walgreens presentó su oposición al recurso el 28 de agosto de 1998. El Departamento de Salud, representado por el Procurador General, hizo lo propio el 5 de octubre de 1998.
Contando con el beneficio de todas las partes estamos en condiciones de resolver.
II
En primer término, debemos determinar cuál es la reglamentación aplicable a los hechos ante *894 nuestra consideración. Para ello examinaremos la normativa pertinente al efecto retroactivo de una disposición que deroga una previa, sea ésta de carácter procesal o de naturaleza sustantiva.
El artículo 3 del Código Civil preceptúa lo siguiente:

"Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.

En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior."

Nuestro Tribunal Supremo ha interpretado el alcance de dicha norma, disponiendo que aunque en una ley no se haya dispuesto expresamente el efecto retroactivo de la misma, procede su aplicación retroactiva cuando dicha interpretación resulta la más razonable de acuerdo al propósito legislativo. Junta de Relaciones del Trabajo v. Autoridad de Energía Eléctrica, _ D.P.R. _ (1993), 93 J.T.S. 49, opinión de 1 de abril de 1993; Díaz v. Secretario de Hacienda, 114 D.P.R. 865 (1983).
Dicho foro ha eximido de la aplicabilidad de la referida norma a las disposiciones de carácter procesal, por ser éstas de interés público. Junta de Relaciones del Trabajo v. Autoridad de Energía Eléctrica, supra. De manera, que en ausencia de disposición expresa que declare su prospectividad, las normas de carácter procesal tienen efecto retroactivo. Esto significa que las mismas son de aplicación a los casos que en ese momento estén pendientes y a los que se presenten con posterioridad a esa fecha. Lincoln Savings v. Figueroa, 124 D.P.R. 388 (1989).
Las circunstancias particulares que han dado origen al presente recurso hacen necesario que revisemos cuáles disposiciones debieron regir la solicitud de participación de las farmacias opositoras, tanto en lo que se refiere al carácter sustantivo, como respecto al procedimiento adjudicativo (carácter procesal), mediante el cual administrativamente debía dilucidarse la solicitud.
La solicitud de Walgreens requiriendo la reubicación de la farmacia fue presentada en el Departamento de Salud el 9 de octubre de 1997. A esa fecha estaba vigente el Reglamento del Secretario de Salud Núm. 56, aprobado el 15 de agosto de 1986.
Posteriormente, el 20 de octubre de 1997, fue aprobado el Reglamento Núm. 89, que entró en vigor 30 días después. El mismo derogó expresamente el Reglamento Núm. 56, según dispuesto en su Artículo IX(1). Sin embargo, nada se dispuso respecto a si el nuevo cuerpo reglamentario tendría efecto retroactivo.
En ausencia de la voluntad expresa de la agencia en el sentido de que el Reglamento Núm. 89 tenía efecto retroactivo, es forzoso concluir que el Reglamento 56, vigente al momento de presentarse la solicitud, era el que debía regir la situación planteada en cuanto a su naturaleza sustantiva. Del examen de ambos reglamentos no surgen diferencias significativas en cuanto a las disposiciones pertinentes a la situación que motiva la controversia ante nos. No hay disposición alguna que nos mueva a determinar que el nuevo reglamento perjudicó derechos adquiridos al amparo del anterior. Podemos concluir, que en cuanto a la materia sustantiva, ambos reglamentos coinciden en lo relativo a los derechos de participación que una "persona afectada" por la reubicación de una farmacia puede tener en estos casos. Por ello, la aplicación del Reglamento Núm. 56 no violenta propósito cuasi-legislativo alguno, en lo que se se refiere a este caso.
No obstante, en lo concerniente al aspecto procesal de la solicitud, observamos que el Reglamento 56 contiene un procedimiento específico para conducir una vista administrativa, establecido por el Artículo VIII del mismo.
De otra parte, el Artículo V(6) del Reglamento Núm. 89, dispone que el procedimiento administrativo y la celebración de la vista pública se regirán por las disposiciones del Reglamento del Secretario de Salud para Regular los Procedimientos Adjudicativos en el Departamento de Salud y sus Dependencias, refiriéndose al Reglamento Número 85 de 5 de agosto de 1996.
Siendo el Reglamento Núm. 85 uno de carácter procesal y estando vigente al momento de la *895 celebración de los procedimientos administrativos, resulta evidente que podía ser utilizado para dilucidar el caso ante la agencia administrativa. Es decir, que aun cuando el Reglamento 56 era pertinente en este caso para considerar los aspectos sustantivos de la controversia, debían tomar en consideración las disposiciones establecidas por el Reglamento Núm. 85, que en virtud de lo dispuesto en el Reglamento Núm. 89, era el vigente en materia procesal y el cual, conforme a la jurisprudencia reseñada, podía cobrar carácter retroactivo.
Resuelto este aspecto, debemos considerar si las Farmacias Lechuga, San Marcos y Sonia tienen derecho a participar en el proceso de reubicación en calidad de interventoras u opositoras.
El artículo 2 de la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, dispone lo siguiente:

"Ninguna persona podrá adquirir o construir una facilidad de salud u ofrecer o desarrollar un nuevo servicio de salud, o hacer inversiones de capital por o a favor de una facilidad de salud o adquirir equipo médico altamente especializado sin antes haber obtenido un certificado de necesidad y conveniencia otorgado por el Secretario. Se requerirá un certificado de necesidad y conveniencia para las siguientes actividades:

(1).
(2).

(3)Inversión de capital hecha por o a favor de una facilidad de salud existente por la cantidad de quinientos mil (500,000) dólares o más incluyendo los costos de cualquier estudio, planos, especificaciones y otras actividades relacionadas con la inversión, excepto que cuando se trate de facilidades de salud que sean farmacias, bancos de sangre y laboratorios clínicos en que siempre se requerirá un certificado de necesidad y conveniencia. Aplica a la adquisición de facilidades por donación, arrendamiento o de cualquier otra compra."

En cuanto a los criterios para expedir o denegar uno de estos certificados, el artículo 3 de la ley antes citada provee:
"El Secretario establecerá mediante reglamento los criterios para expedir o denegar el certificado de necesidad y conveniencia. Al establecer dichos criterios el Secretario tomará en consideración las guías generales establecidas en la ley federal y en las sees. 334 a 334j de este título, conforme a la política pública y estrategia de desarrollo adoptada por la Junta de Planificación, incluyendo el Plan de Desarrollo Integral."
Entre dichos criterios entrarán los siguientes:

"(1) La relación entre la transacción para la cual se solicita el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.

(2) La necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán mediante la misma.

(3) La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.

(4) La relación entre el sistema de salud operante en el área y la transacción propuesta.

(5) En el caso específico de solicitantes de certificados de necesidad y conveniencia para el ofrecimiento de servicios de salud, el Secretario deberá considerar también los siguientes factores:

(a) La disponibilidad de recursos humanos y económicos para el rendimiento eficiente de esos servicios.

*896
(b) El impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área en donde los servicios habrán de prestarse.

c) El por ciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. El Secretario deberá exigir que la solicitud indique el tiempo que el solicitante necesitará para hacer disponible el servicio o equipo objeto de la petición o realizar el gasto objeto de la transacción."

Al amparo de la citada Ley Núm. 2, el Departamento de Salud aprobó el Reglamento Núm. 56, antes mencionado, con el propósito de establecer todo lo relacionado con las solicitudes de los certificados de necesidad y conveniencia y el otorgamiento de los mismos.
Los criterios específicos para evaluar las cualificaciones de una farmacia para fines de la expedición del certificado, están contenidos en la sección A(13) del artículo VI del Reglamento 56. Respecto a la ubicación, el inciso 2 de la referida sección dispone, en lo pertinente, lo siguiente:

"La ubicación se evaluará a base de la necesidad del área de servicios, la cual se compondrá del área localizada dentro del radio de una (1) milla de la farmacia propuesta."

En cuanto a las personas a ser notificadas de las solicitudes recibidas en la agencia, el artículo IV(2) (b) del mismo reglamento provee:

"Dentro de los treinta (30) días siguientes del recibo de la solicitud, el Secretario o su representante autorizado notificará mediante carta circular, por correo, a las personas afectadas y al público en general. La notificación al público en general se hará mediante la públicación en un (1) periódico de circulación general, de un resumen de dicha solicitud."

La definición de "personas afectadas" según surge del artículo II sección 25 de dicho reglamento, es la siguiente:

"Cualquier persona directamente afectada por la decisión del Secretario respecto a una solicitud de exención o certificado de necesidad y conveniencia, incluyendo:

a) El solicitante o proponente.

b) Las facilidades de salud localizadas en el área de servicio del proyecto que proveen servicios similares al propuesto.

c) Las facilidades de salud que previo al recibo de la solicitud bajo consideración, han informado por escrito su intención de prestar servicios similares en el futuro.

d) Cualquier agencia que establezca tarifas a las facilidades de salud en Puerto Rico."

El análisis integral de las referidas disposiciones nos lleva a la conclusión de que conforme al Reglamento núm. 56, las personas que por disposición reglamentaria son llamadas a ser notificadas de manera individual y, por ende, a participar de un proceso de solicitud de certificado de necesidad y conveniencia, en este caso una reubicación, son las personas afectadas.
Las facilidades de salud afectadas en este caso, serían las localizadas en el área de servicio del proyecto, es decir, las localizadas dentro de una milla de la farmacia propuesta. Ninguna de las farmacias solicitantes ha demostrado cumplir con este requisito.
No obstante, debemos señalar que aun cuando la agencia requiera motu proprio que se le notifique de los procedimientos a todas las farmacias ubicadas en el municipio de la localidad propuesta, ello por sí sólo, no le da el derecho de participación que solicita la recurrente. No erró la agencia al así disponerlo.
Por otro lado, el Reglamento Núm. 85 reconoce dos categorías adicionales de personas que pueden *897 participar en los procedimientos adjudicativos del Departamento de Salud.
Una de ellas se refiere al "interventor" contemplado en el Artículo V(D) del Reglamento Núm. 85. El mismo se ha definido como aquella persona que no sea parte original en cualquier procedimiento adjudicativo que el Departamento de Salud esté celebrando y que haya demostrado su legitimación activa o interés en el procedimiento de acuerdo a los criterios establecidos en la Ley 170, de suerte que pueda participar en el mismo para proteger adecuadamente sus intereses.
Nuestro Tribunal Supremo ha establecido que, conforme a la doctrina de legitimación activa, el promo vente de la acción debe cumplir con los siguientes requisitos: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso y no uno abstracto o hipotético; (3) que la causa de acción debe surgir bajo el palio de la Constitución o de una ley; y (4) que exista una conexión entre el daño sufrido y la causa de acción ejercitada. Asociación de Maestros v. Torres, _ D.P.R. _ (1994), 94 J.T.S. 145, opinión de 30 de noviembre de 1994; P.P.D. v. Rosselló, _ D.P.R. _ (1995), 95 J.T.S. 165, opinión de 25 de diciembre de 1995; García v. Junta de Calidad Ambiental, _ D.P.R. _ (1997), 97 J.T.S. 25, opinión de 21 de febrero de 1997.
En lo que respecta a los criterios que definen a una parte con interés en el procedimiento, el Artículo VIII C del Reglamento Núm. 85, equivalente a la sección 3.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, preceptúa lo siguiente:
"1. Cualquier persoria que tenga un interés legítimo en un procedimiento adjudicativo podrá someter, con al menos 5 días de antelación a la vista en su fondo del caso, una moción por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. El Departamento podrá conceder o denegar la solicitud, a su discreción, tomando en consideración eptre otros factores los siguientes:

a. Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

b. Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

c. Que el interés del peticionario ya esté representado adecuadamente por las partes en el pleito.

d. Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

e. Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

f. Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

g. Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

2. Denegatoria de Intervención:

Si el Departamento decide denegar una solicitud de intervención en un procedimiento adjudicativo notificará su determinación por escrito al peticionario, los fundamentos para la misma y el recurso de revisión disponible.

3. En el caso de un procedimiento relativo a una petición para la concesión de un Certificado de Necesidad y Conveniencia (CNC), cualquier persona que desee comparecer en el proceso administrativo, ser oído y presentar evidencia en la vista en su fondo del caso, deberá observar el cumplimiento específico con las disposiciones del Reglamento del Secretario de Salud relativo a la concesión de Certificados de Necesidad y Conveniencia (el Reglamento) y deberá notificarle la proponente del CNC y a cualquier otra persona que haya solicitado ser oído y participar en el 
*898
procedimiento una copia del documento mediante el cual solicite ser oído en dicho proceso dentro del término provisto en el Reglamento para su presentación ante el Departamento de Salud. A los fines de esta sección, toda persona que haya cumplido con los requisitos antes mencionados se considerará fin interventor dentro del proceso administrativo de evaluación de la solicitud de C.N.C."

En cuanto a la figura del "opositor", según definida por el Artículo V(R) del Reglamento Núm. 85, ésta es la persona con interés en los procedimientos y que cumple con los requisitos estatutarios y reglamentarios para oponerse a una petición y someter evidencia en contra de su otorgamiento.
Aunque el reglamento no hace una referencia directa a cuáles son estos criterios, puede concluirse que deben ser los mismos que identifican al interventor.
Aplicando la referida normativa a los hechos del presente caso, surge de la resolución recurrida que la situación de las farmacias fue analizada por el Departamento de Salud a la luz de taless criterios. Concurrimos con dicha agencia en la conclusión de que a los fines de la doctrina de legitimación activa, las farmacias recurrentes no' han demostrado que sufrirían daño como resultado de la relocalización propuesta por la Farmacia Walgreens.
En ausencia de prueba que demuestre lo contrario, también consideramos correcta la evaluación que hiciera dicho foro a los efectos de la aplicación de los criterios contenidos por la sección 3.5 de la Ley Núm. 170, supra, y el Artículo VIIIC del Reglamento 85:

"a. Los intereses de las opositoras no se verán adversamente afectados porque la acción propuesta es una relocalización a 0.7 millas en la cual la proponente servirá prácticamente la misma área de servicio que sirve actualmente y en la cual ninguna de las farmacias opositoras se encuentra ubicada.

b. Las farmacias opositoras no tienen ningún derecho que proteger puesto que ningún derecho se les ha visto o se les verá afectado.

c. Los intereses de las opositoras no tienen que estar representados porque éstas no tiene un interés legalmente protegido que pretender. Las partes realmente afectadas, que son las que se encuentran ubicadas en el área de servicio propuesta, fueron debidamente notificadas de la solicitud de Walgreens y decidieron no participar.

d. La participación de las opositoras no ayudaría a preparar un expediente más completo. Al contrario, dilataría los procedimientos, como ya ha sucedido, y no añadiría información pertinente que de otro modo no esté disponible a este Departamento.

e.Las opositoras no representan ni son portavoces de la comunidad que vive en el área de servicio propuesta. Ninguna de las farmacias en el área de servicio propuesta se opone a la relocalización de Walgreens.

f.Las opositoras no aportarían ningún tipo de pericia ni conocimientos especializados. Los . argumentos de las opositoras son de índole puramente económica y no tienen nada que ver con la necesidad ni conveniencia para el público de la relocalización propuesta."

Es norma reiterada que las determinaciones y los criterios de las agencias y organismos administrativos especializados gozan de una presunción de corrección y merecen la mayor deferencia por parte de los tribunales, en vista de su vasta experiencia y conocimiento (expertise). Ello es así, a menos que se demuestre parcialidad o abuso de discreción. Santos v. Municipio de Comerío, _ D.P.R. _ (1996), 96 J.T.S. 170, opinión de 9 de febrero de 1996; Maisonet Felicieév. Corp. Fondo del Seguro del Estado, _ D.P.R. _ (1996), 96 J.T.S. 169, opinión de 30 de diciembre de 1996.
Las agencias y organismos administrativos cuentan con experiencia y conocimientos altamente especializados sobre los asuntos que se le encomiendan y resuelven de día en día. Por esta razón, en casos donde se solicita la revisión de una resolución administrativa, los tribunales apelativos deben proceder en forma cuidadosa al pasar juicio sobre la prueba presentada y utilizada por la agencia para fundamentar sus conclusiones, ya que la revisión se limita a determinar si hubo actuaciones *899 arbitrarias, caprichosas, o de forma irrazonable, de tal modo que pueda concluirse que la agencia cometió un abuso de discreción. San Vicente Frau v. Policía de Puerto Rico, _ D.P.R. _ (1996), 96 J.T.S. 148, opinión de 12 de noviembre de 1996; La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., _ D.P.R. _ (1993), 93 J.T.S. 88, opinión de 2 de junio de 1993.
La parte recurrente no nos ha puesto en condiciones de poder determinar que el Departamento de Salud erró o abusó de su discreción. Sus argumentos no derrotan la presunción de regularidad y corrección de la cual gozan las determinaciones administrativas. Esta debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Gobernador de Puerto Rico v. Hon. Juan Aubín, (1997), 97 J.T.S. 31, opinión de 10 de marzo de 1997.
III
Por los fundamentos que anteceden, confirmamos la resolución recurrida y ordenamos se remita el caso al foro administrativo para que actúe de forma consistente con lo aquí dispuesto.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General